**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LORI CAILLET, ) | |
| ) | CASE NO. 5:11-cv-02155 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Lori Caillet ("Caillet ") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Caillet's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On January 23, 2009, Caillet filed an application for POD, DIB, and SSI alleging a disability onset date of January 15, 2006.[1] Her application was denied both initially and upon

---

[1] Caillet amended her alleged onset date to October 12, 2008 at the hearing. (Tr. 13.)

reconsideration. Caillet timely requested an administrative hearing.

On January 14, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Caillet, represented by counsel, testified. Lynn Smith also testified as an impartial vocational expert ("VE"). On February 18, 2011, the ALJ found Smith was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age fifty-one (51) at the time of her administrative hearing, Caillet is "closely approaching advanced age" under social security regulations. *See* 20 C.F.R. §§ 404.1563(d) 416.963(d). Caillet has a limited education and past relevant work as a machine operator, deli clerk, automobile detailer, and short-order cook.  (Tr. 22.)

*Hearing Testimony*

At the hearing, Caillet testified as follows:

- She is 5'1".  (Tr. 35.)

- She is able to drive an automobile.  (Tr. 35.)

- She is divorced.  (Tr. 37.)  She lives with her brother, nephew, and her nephew's girlfriend.  She has one daughter who is an adult.  (Tr. 36.)

- She last completed the tenth grade and never obtained a GED.  (Tr. 37.)

- The longest job she held was for three years.  She believes she changed jobs so frequently due to panic attacks.  (Tr. 37.)

- She sought treatment for her panic attacks and her doctors prescribed medication.  (Tr. 38.)

- She used alcohol because she was "paranoid," but did not drink before work.  (Tr.

       38-39.)  She would consume alcohol while taking mood-altering medications. She stopped drinking alcohol seven months earlier.  (Tr. 39.)  She was arrested twice for driving under the influence, but did not lose her driver's license.  (Tr. 39-40.)

- She has nerve deafness in her right ear.  She tried a hearing aid years ago, but it did not help.  She is able to hear out of her left ear.  (Tr. 40.)

- She had tumors on her bladder.  (Tr. 40.)

- She has undergone hernia repair surgeries.  (Tr. 41.)

- She has hypertension that is controlled with medication.  (Tr. 41.)

- She has Graves' disease, an autoimmune disease resulting in an overactive thyroid, that is controlled with medication.  However, her doctors "have to check it often, because it doesn't, for some reason, stabilize."  (Tr. 41.)

- She had surgery for carotid stenosis, and has not experienced any complications.  (Tr. 41.)

- She last worked in 2008 at EB Wire performing factory type work.  It was a full-time job that she obtained through a temporary service.  She left that job due to carpal tunnel syndrome in her hand.  (Tr. 42.)  She experienced burning in her fingers and received a brace.  (Tr. 43.)

- Her doctors indicated that she had some form of osteoarthritis, which she stated was in her shoulder but radiates to her head as well.  She had received cortisone shots.  She was last treated for osteoarthritis in 2008.  (Tr. 43.)

- On a normal day, she does the dishes after waking up, takes the dog outside, and has a cup of coffee.  Sometimes, she takes naps, but spends most of the day watching television in the basement.  (Tr. 43.)

- She could run a vacuum cleaner, but there is not one in the house.  (Tr. 43-44.)  She cooks for herself and does her own laundry.  She requires no help with grooming or personal care.  (Tr. 44.)

- She does not have a social life, but speaks with her daughter just about every day.  She goes to the grocery store "once in a while."  (Tr. 44.)

- Her sister handles her finances.  (Tr. 44.)

- She has difficulty speaking on the phone due to her hearing problems, and has

3

trouble hearing in a factory setting due to the noise. (Tr. 48.)

- She is right-handed. She has pain in her left arm and avoids using it. She has trouble lifting and reaching overhead with the left arm. (Tr. 49.)

- Her doctors check for reoccuring bladder tumors every three months. At her previous surgery she had five tumors removed. (Tr. 50.)

- She lives in the basement of her brother's house, and leaves the basement only four to five times daily to use the bathroom. She speaks with her brother and nephew occasionally, but for only a few minutes. (Tr. 50.)

- She sees her daughter two to three times per month. (Tr. 51.)

- She has crying spells once every couple of months and panic attacks six to seven times per month that last ten to fifteen minutes. (Tr. 51.) She takes Xanax for her panic disorder. (Tr. 52.)

- She takes medication for her cholesterol, but it is always high. (Tr. 52.)

The ALJ asked the VE to consider several hypothetical questions involving an individual of the same age, education and work experience as Caillet with the following RFC.

> ... the residual functional capacity to perform the functional range of light work that allows for periodic alternating of positions between sitting and standing to relieve discomfort; is simple, repetitive, and routine; with no production quotas; where interaction with others would be on an intermittent basis; in a relatively static environment where changes could be explained.

(Tr. 60.)

In response to the ALJ's first hypothetical, the VE testified that there were no jobs such a person could perform due to the combination of the sit/stand option with the limitation to intermittent interaction with others. (Tr. 61.)

The ALJ then posed a second hypothetical limited to "the functional range of light work; that is simple, repetitive, and routine; with low production quotas; in a relatively static environment where changes could be explained." (Tr. 61.) In response, the VE identified the

4

following jobs that such a person could perform: office cleaner (2,400 jobs locally; 28,000 statewide), office helper (1,000 jobs locally; 3,000 statewide), and cafeteria attendant (1,500 jobs locally; 15,000 statewide).  (Tr. 61-62.)

The ALJ then posed a third hypothetical limited to "the functional range of light work; that is simple, repetitive, and routine; with low production quotas; where interaction with others would be on an intermittent basis; in a relatively static environment where changes could be explained."  (Tr. 62.)  In response, the VE testified that such an individual could perform the above identified office cleaner job, as well as the jobs of a laundry worker (2,500 jobs locally; 30,000 statewide) and mail clerk (1,200 jobs locally; 6,000 statewide).  (Tr. 62.)

Finally, the ALJ posed a fourth hypothetical:

> Consider a hypothetical individual of the claimant's age, education, work experience; and the [RFC] to lift and/or carry up to 10 pounds; stand and walk with normal breaks for about two hours in an eight-hour workday; sit with normal breaks for about two hours in an eight-hour workday; occasionally twist, stoop, bend, and crouch; frequently climb stairs; and never climb ladders, ropes, or scaffolds; no work around hazardous equipment, machinery, or dangerous or unprotected heights.  This work should also be simple, repetitive, and routine; with low productions quotas; where interaction with others would be on an intermittent basis, in a relatively static environment where changes could be explained.

(Tr. 62-63.)

In response, the VE testified that such an individual was unemployable.  (Tr. 63.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

5

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Caillet was insured on her alleged disability onset date, October 12, 2008 and remained insured through the date of the ALJ's decision, February 18, 2011. (Tr.15.) Therefore, in order to be entitled to POD and DIB, Caillet must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Caillet established medically determinable, severe impairments, due to labrynthitis of the right ear, grade one acromio-clavicular separation, carotid stenosis, and an affective disorder.  (Tr. 15.)  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Caillet was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 23.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Caillet is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d

762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Treating Physician*

Caillet argues that the ALJ erred by rejecting the opinion of her treating physician, Alla Al Saif, M.D. (ECF No. 16 at 12-15.) Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th

Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

Caillet asserts the ALJ failed to give good reasons for rejecting the December 8, 2010, opinion of her treating physician, Dr. Al Saif. (Tr. 519-21.) In relevant part, Dr. Al Saif opined that Caillet could lift less than ten pounds frequently, but could lift ten pounds occasionally; and

---

[3] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

could stand/walk for two hours, and sit for two hours in an eight-hour workday. (Tr. 519.) Dr. Al Saif stated that these limitations were supported by "tenderness lower back." (Tr. 520.) He also noted that Caillet was deaf in her right ear. (Tr. 521.) In addressing Dr. Al Saif's opinion, the ALJ found as follows:

> The undersigned accords very little weight was accorded [sic] the opinion of the claimant's treating physician, Alla Al Saif, M.D., that the claimant could perform, work at the sedentary level, could stand and/or walk for a total of two hours in an eight hour workday, could sit for a total of two hours in an eight hour workday, could only occasionally stoop and crouch and could frequently climb ramps and stairs, but could never climb ladders. Dr. Al Saif's opinion was based, by its own terms, on low back pain for which the claimant was never treated and of which the claimant never complained. Further, his opinion is inconsistent with his opinion, rendered less than eighteen months earlier, that the claimant had no significant work related limitations (12F).

(Tr. 21.)

The Commissioner argues that Dr. Al Saif's opinion was basically an RFC determination that the ALJ was not required to give any particular weight or deference. (ECF No. 17 at 13-14.) It is true that an ALJ is not bound by conclusory statements of a treating physician maintaining a claimant is disabled. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). "Opinions on some issues, such as [opinions that you are disabled or your residual functional capacity], are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case ..." 20 C.F.R. § 404.1527(e). Here, however, the ALJ did not simply reject an opinion as to whether Caillet was disabled or an RFC statement, but also rejected the significant lifting, standing/walking, and sitting restrictions that

10

Dr. Al Saif assigned to Caillet.[4] Although the ALJ was not required to accept these restrictions, he was required to articulate a reason for rejecting them.[5]

Essentially two reasons were given for rejecting the limitations found by Dr. Al Saif. The ALJ noted that Dr. Al Saif's opinion was inconsistent with an opinion he rendered just eighteen months earlier where he opined that Caillet had no significant work related limitations. (Tr. 21, 363.) Caillet argues that this does not constitute a sufficient reason for rejection, as Dr. Al Saif's second opinion, after months of extended treatment, was better informed. (ECF No. 16 at 18.) While it is understandable that the ALJ would have been troubled by the vast discrepancy between the two opinions, the Court agrees that this reason, standing alone, would be an insufficient basis for rejection. Nonetheless, the ALJ also explained that he rejected the opinion because it was based solely on the presence of "tenderness [in the] lower back," a condition for which Caillet was never treated and of which she never complained. (Tr. 21.) Caillet does not argue that this is inaccurate, and neither Caillet's own testimony nor the medical evidence cited in her brief contradicts the ALJ's finding. Instead, Caillet argues that Dr. Al Saif's opinion as to her exertional limitations was not based solely on lower back pain – as the opinion itself noted –

---

[4] The ALJ found that Caillet could perform light work, and thereby necessarily rejected the level of restriction found by Dr. Al Saif. "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing the primary difference between sedentary and most light jobs.... Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30.

[5] While certain medical opinions, if accepted, may impact a claimant's RFC – even to the point of being dispositive, the medical opinion is not thereby transformed into an RFC opinion that may be ignored.

11

but upon the combination of all her impairments. (ECF No. 16 at 17-18.)

Pursuant to 20 C.F.R. § 404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.... Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." The ALJ did not err by ascribing little weight to an opinion that was not supported by medical signs and laboratory findings or that the basis of which was poorly explained. Certainly, the ALJ did not err by taking Dr. Al Saif's statement – that the purported limitations were based on tenderness in the lower back – at face value.

Therefore, the ALJ did not err in his consideration of Dr. Al Saif's opinion.

### *Osteoarthritis and Bladder Cancer*

Caillet argues that the ALJ erred by failing to consider her osteoarthritis and bladder cancer when determining her RFC. (ECF No. 16 at 12-15.)

The ALJ did not include osteoarthritis or bladder cancer among Caillet's "severe impairments." (Tr. 15.) The ALJ did note the presence of osteoarthritis, but not the presence of bladder cancer. (Tr. 16.) However, he found that Caillet's osteoarthritis "will not impose more than minimal limitations on the claimant's ability to perform basic work activities." *Id*. The Sixth Circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic

12

work activities, the ALJ must treat it as "severe." S.S.R. 96-3p, 1996 WL 374181 at *1. However, where an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576-577 (6th Cir. 2009).

Furthermore, an RFC determination is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the Commissioner's RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

Tellingly, Caillet has not identified any actual work-related limitations caused by her

osteoarthritis or bladder cancer. While there is evidence of these conditions in the record, Caillet has not identified any medical source statements concerning the functional limitations they cause. A diagnosis alone does not define the functional limitations caused by an impairment. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that condition is disabling). Caillet has argued that state agency physicians considered her osteoarthritis and opined that she required a sit/stand option. (ECF No. 16 at 13.) This argument is not well taken. The state agency physicians do not specifically attribute the need for a sit/stand option – a finding not adopted by the ALJ – to Caillet's osteoarthritis. With respect to her bladder cancer, which resulted in two surgeries wherein tumors were successfully removed – Caillet does not offer an argument as to how this impacted her ability to perform work related functions. As such, these assignments of error are without merit.

***Sit/Stand Option***

Caillet also argues that the ALJ should have incorporated a sit/stand option into the RFC. Specifically, Caillet points out that one state agency physician, Eli Percenovich, D.O., found that, while Caillet can stand six hours in an eight hour workday, she "must periodically alternate sitting and standing to relieve pain or discomfort." (Tr. 347.) Dr. Percenovich's opinion was affirmed by two separate state agency physicians. (Tr. 385, 428.)

Caillet argues that the ALJ erred by rejecting the need for a sit/stand option. Although Caillet appears to argue that the rejection was improper because the ALJ does not have any medical expertise, the ALJ is charged with a duty to evaluate all of the medical opinions in the

record and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527, 416.927. As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the

15

supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. §§ 404.1527(d),(f), 416.927(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky*, 167 Fed. App'x 496, 508 (6th Cir. 2006). The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

Here, the ALJ explicitly addressed the opinions of the state agency physicians, but found that "their opinion with regard to the sit/stand option is not supported by the medical evidence of record or any allegation of the claimant." (Tr. 21.) The ALJ met the minimal burden of articulating the reasons for the weight he ascribed to the opinions of the state agency physicians. As such, Caillet's argument is without merit.

*Third Party Report*

Finally, Caillet argues that the ALJ erred by ascribing little weight to her mother's third-party report. (ECF No. 16 at 15-16.) Pursuant to 20 C.F.R. § 404.1513(d)(4), the ALJ may also use evidence from "[o]ther non-medical sources (for example, spouses, *parents* and other caregivers, siblings, other relatives, friends, neighbors, and clergy)" to "show the severity of [a claimant's] impairment(s) and how it affects [her] ability to work." (Emphasis added). In *Roark*

16

*v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 148016, 53-55 (S.D. Ohio 2011), the court explained that "[t]he assessment of the credibility of lay witnesses, as well as the weight to attribute to their testimony, is peculiarly within the judgment of the ALJ." The *Roark* court observed that lay testimony "must be given 'perceptible weight' [only] where it is supported by medical evidence." *Id.* (*citing Allison v. SSA*, No. 96-3261, 1997 U.S. App. LEXIS 4483 (6th Cir. 1997)); *Lashley v. HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians."); *accord Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Pursuant to SSR 06-3p, 2006 SSR LEXIS 5 (Aug. 9, 2006), an ALJ must "consider all relevant evidence in the case record," which necessarily includes evidence from "other sources." Nonetheless, "[SSR 06-3p] does not ... include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'" *Chambers v. Astrue*, 2011 U.S. Dist. LEXIS 143080 at \*\*28-29 (S.D. Ind., Dec. 13, 2011).

Here, the ALJ acknowledged the third-party statement of Caillet's mother, who lives in Florida. (Tr. 21, 178-85.) He ascribed her report little weight explaining as follows:

> Careful consideration was given to the third party function report submitted by the claimant's mother, Betty Ladd. (Tr. 21.) However, Ms. Ladd neither alleged, nor was demonstrated to possess, the medical and/or vocational expertise, which is central to the disposition of these claims. Further, Ms. Ladd bears a close familial relationship to the claimant, which would tend to color her opinion in claimant's favor. Accordingly, little weight was accorded her report.

(Tr. 21.)

Caillet has not cited any law suggesting that it was reversible error for the ALJ to discount her mother's report for the reasons stated. Indeed, some courts have held to the contrary. *See,*

17

*e.g., McClanahan v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 15599 at *38 (S.D. Ohio Jan. 20, 2011) (finding no impropriety in the ALJ's rejection of the testimony of claimant's live-in girlfriend on the basis that she was not an impartial witnesses); *Moore v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 59080 (S.D. Ohio May 17, 2010) (affirming decision the record did not corroborate the testimony of lay witnesses who were not impartial and who relied on plaintiff's subjective allegations for their opinions). Though Caillet questions the rationale of the Commissioner soliciting third party opinions if they can be so easily set aside, that issue is not for this Court to decide. (ECF No. 16 at 16.) The ALJ was not required to give "perceptible weight" to the statement, as the ALJ's opinion as a whole found that Caillet's alleged limitations were not credible to the extent they were inconsistent with the RFC and were not fully supported by the medical evidence of record.

While an explanation based upon the evidence in the record would have been preferable, the ALJ did not err in his consideration of the third party statement of Caillet's mother.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 19, 2012